CITY OF SAN ANTONIO V. CLARENCE J. CARR ET AL.

No. A-7671. Decided July 20, 1960.
Rehearing Overruled October 5, 1960.
(338 S.W. 2d Series 122)

*Carlos C. Cadena,* City Attorney, and *Charles L. Smith,* Assistant City Attorney of San Antonio, for petitioners.

*Adrian A. Spears,* of San Antonio, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

Respondents Clarence J. Carr and Mrs. George Kirkpatrick brought suit against the City of San Antonio to recover back pay from the City based upon the salary or wage rate applicable to patrolmen in the San Antonio Police Department. They each recovered a summary judgment for $2,680.00. The judgment recited that both Carr and Mrs. Kirkpatrick were "entitled to receive a base salary of $340.00 per month, plus longevity, from August 22, 1957 to December 31, 1957, and $360.00 per month, plus longevity from January 1, 1958 to the date of this judgment, or a total of $7,140.00, plus longevity; whereas, said Plaintiff was paid only $230.00 per month, plus longevity, from August 22, 1957 to March 16, 1958, and $220.00 per month, plus longevity from March 16, 1958 to the date of this judgment, or a total of $4,466.00, plus longevity, leaving a balance due to said Plaintiff to the date hereof, in the sum of $2,680.00."

The Court of Civil Appeals has affirmed. 329 S.W. 2d 949.

This litigation has an involved history. At the time the Firemen's and Policemen's Civil Service Act (Article 1269m, Vernon's Ann. Texas Stats.) became operative the City of San Antonio took the position that only those employees directly engaged in law enforcement work were comprehended by the Act. City of San Antonio v. Wiley, 252 S.W .2d 471, wr. ref., n.r.e., City of San Antonio v. Handley, 308 S.W. 2d 608, wr. ref. This resulted in numerous places becoming classified under the Act by the employees' serving in such position for a six months period. Article 1269m section 2 provided that, "By the term 'policeman' is meant any member of the Police Department who draws compensation for his services as a member of said Department." Article 1269m, section 12 provided that, "if an officer or em-

ployee shall have been permitted to serve the six (6) months probationary period, the service of said officer or employee shall ipso facto constitute the creation of said position or office under a civil service classification."

As pointed out in City of San Antonio v. Hahn, Texas Civ. App., 274 S.W. 2d 162, wr. ref., n.r.e., the City could have, before the law became effective discharged or transferred any persons whom it felt should not be covered by the Act to noncivil service departments, but such course was not adopted because of the City's contention that employees who were not peace officers were not covered by the Act. Positions considered as coming within the Act were recognized by ordinance while other positions gain classified status because those holding them served a six months period as required by Article 1269m, section 12. This resulted in a rather unplanned civil service setup. By virtue of the statutory provision and the City's inaction at the time the Civil Service Act took effect, persons employed as telephone switchboard operators, clerks in the parking meter department, custodial employees, typists, wrecker drivers, garage attendants and holders of other similar positions became statutory "policemen" and were afforded civil service classification. The rights and privileges of these employees as holders of classified civil service positions has been a prolific source of litigation of which this suit is one of a series.

These respondents with six others were parties to the case of City of San Antonio v. Hahn, Texas Civ. App., 274 S.W. 2d 162, wr. ref., n.r.e. in which the Austin Court of Civil Appeals affirmed a judgment of the Bexar County District Court which held that Clarence J. Carr was entitled to the civil service classification of "Clerk, Parking Meter Division, Police Department," and that Mrs. George Kirkpatrick was entitled to the classification of "Switchboard Operator, Police Department," under and by virtue of the six months service provision of Article 1269m, sec. 12.

Upon the basis of a stipulation hereinafter noticed, Carr and Mrs. Kirkpatrick were awarded judgment for back pay for a considerable period of time prior to March 4, 1954, the date of judgment.

In 1957, the 55th Legislature amended the Firemen's and Policemen's Civil Service Act, Article 1269m, by re-defining the terms "Firemen" and "Policemen" in Article 1269m, section 2, and omitting the proviso of Article 1269m that "if the officer

or employee shall have been permitted to serve the six (6) months probationary period, the service of said officer or employee shall ipso facto constitute the creation of said position or office under a civil service classification." Acts 1957, 55th Leg., p. 1171, ch. 391.

The City construed this Act as giving it authority to transfer all employees holding civil service positions created by virtue of the repealed "six months service" provision (and not by ordinance) to other municipal departments which were not covered by civil service.

On August 22, 1957 the City Council of the City of San Antonio adopted an ordinance which purported to abolish all classified civil service positions in the Police Department except those set forth in specifically mentioned ordinances theretofore adopted by the City Council. Such ordinances related strictly to peace officers, such as Inspectors, Captains, Lieutenants, Sergeants, Detectives and Patrolmen; the lowest classification insofar as salary was concerned being that of Patrolmen.

The position classification held by Carr, as "Clerk, Parking Meter Division," in the Police Department was transferred to the Administrative Pool, Personnel Division under the title "Clerk I." The position held by Mrs. Kirkpatrick as "Switchboard Operator, Police Department" was transferred to the Administrative Pool Personnel Department under the same title, viz: "Switchboard Operator."

This ordinance also contained the provision that:

"Any person holding a position entitled to civil service classification in the Fire Department or Police Department other than those authorized by Section 1 [peace officers] shall, from and after the effective date hereof, be entitled to the minimum base salary or compensation of $220 and the base salary or compensation of such persons is fixed at that amount."

In City of San Antonio v. Handley, Texas Civ. App., 308 S.W. 2d 608, wr. ref., it was held that the 1957 amendment to Article 1269m was prospective and not retroactive in purpose; that the attempted transfer of Police Department employees having civil service status by virtue of the "six months service" provision of Article 1269m, section 12 was void and that such employees retained their civil service positions as members of the Police Department.

As a result of the decision in the Handley case, Carr and Mrs. Kirkpatrick were by ordinance re-transferred to the Police Department under the classifications of "Clerk I" and "Switchboard Operator" respectively.

The civil service classifications of Clerk I, Switchboard Operator and Patrolman are as follows:

## CLERK I

### NATURE OF WORK:

This is general routine clerical work covering a variety of operations and requiring limited use of office machines.

An employee in this class will perform repetitive tasks which follow established procedures. This work is performed under close supervision until a training period has been completed. New or unusual work assignments are performed under detailed instructions until the proper procedure is learned by the trainee. The use of office machines is limited to self instruction and skillful use of these machines is not required. The amount of typing should not exceed 20% of the employee's total working time. Some contact with the public may be required. Filing duties may be fairly detailed and require an experienced filer.

## SWITCHBOARD OPERATOR

### NATURE OF WORK:

This is specialized work in the operation of a telephone switchboard of several trunk lines.

Work involves responsibility for operating a switchboard, receiving and relaying a large number of calls, some of which may be of an urgent nature. Emergency calls require the ability to obtain essential information from excited persons. The operation of switchboards is repetitive, but operators are expected to work very accurately, to remember names and location of personnel and offices, and to acquire sufficient knowledge to answer routing questions directly. Employees are further expected to cultivate good will through courtesy, tact, and helpfulness. After a training period, close supervision is not required.

## PATROLMAN

NATURE OF WORK:

This is a general duty police work in protecting life and property and enforcing laws and ordinances.

Employees of this class are responsible for maintaining law and order, for preventing crimes, and for protecting life and property within the city. Work methods are developed and demonstrated in detail by superior officers. While much of the work is of a routine nature, incumbens must be able to exercise sound and independent judgment in emergency situations where danger to life or property may be involved. All assignments involve responsibility for recognizing the social importance of police functions, for tactful and courteous treatment of the public, and conscientious and efficient performance of duties without immediate supervision. Work is supervised by superior officers through assignment of duties, personal inspections, and review of daily reports.

In the Hahn case it was adjudged that Clarence J. Carr was entitled to the civil service classification of Clerk in the Police Department and that Mrs. George L. Kirkpatrick was entitled to the classification of Switchboard Operator in the Police Department. These are the positions such parties hold under the classification ordinance of the City of San Antonio at the present time. Quite obviously, although both were "policemen" under the statutory definition contained in Article 1269m, section 2, prior to the 1957 amendment, neither was a patrolman in the Police Department. To paraphrase what was said in the Handley case, a classified clerk or switchboard operator is not a classified patrolman and the base pay for a patrolman is not necessarily the base pay for clerk or switchboard operator. We are unable to agree with the Court of Civil Appeals that the holding in the Hahn case establishes the proposition that respondents were either "patrolmen" in the Police Department or entitled to the same rate of pay as patrolmen in the Police Department. Rather, we think, the matter of rate of pay is determined by the holdings of the Handley case. We see no difference between the positions of these respondents and the appellees in the Handley case in this respect.

When closely analyzed, it will be found that there is but one legal holding made by the Court of Civil Appeals in City of San Antonio v. Hahn, 274 S.W. 2d 162, wr. ref., n.r.e., which is expressed in the following excerpt from the opinion, viz:

"We believe that the [trial] court was correct in holding that the several plaintiffs (named in the judgment) [including Carr and Mrs. Kirkpatrick] are members of the San Antonio Police Department and entitled to the benefits of the Civil Service Act, and as such are entitled to the payment of the minimum salary and were entitled to judgment."

At the time of the Hahn case, so far as ordinance action was concerned, the lowest job classification in the Police Department was that of patrolman. The amount of recovery awarded to the plaintiffs in the Hahn case was based upon a stipulation. This is apparent from the opinion of the Court of Civil Appeals.

The stipulation relating to Carr was as follows:

"That as a member of the Police Department of said City, Plaintiff Carr was paid a salary of $150.00 per month from March 3, 1951 to July 31, 1951; that under the minimum salary laws of the State of Texas, applicable to policemen in the City of San Antonio, the minimum salary to which said Plaintiff Carr was entitled, provided he comes within the provisions of the law, was $255.00 per month from March 3, 1951 to June 1, 1951; $265.00 per month from June 1, 1951 to February 1, 1953; and $295.00 per month from February 1, 1953 to August 1, 1953; and $312.00 per month from August 1, 1953 to the present time, including longevity pay of $10.00 per month for each five years of service."

A similar stipulation was made with reference to Mrs. Kirkpatrick.

Although the classification of patrolmen is not mentioned in either stipulation, we take it that the figures mentioned therein were taken from the various ordinances setting the rate of pay applicable to patrolmen in the Police Department.

■ We think the purpose of this stipulation was to enable the court to fix the amount of money recoverable by plaintiffs in the Hahn case in the event the court should hold that they were "policemen" under the Civil Service Act. In other words, it was made for the purposes of the suit then pending and did not operate to fix the civil service status of Carr and Mrs. Kirkpatrick in the future as being "patrolmen" nor as belonging to the same classification as patrolmen. If we say that because of this stipulation, or for any other reason, Carr and Mrs. Kirkpatrick were entitled to the same pay as patrolmen for a period of time end-

ing in March of 1954, it would not necessarily follow that they were entitled to a patrolmen's pay for the period covered by the present suit. Respondents are suing for alleged back pay from and after August 22, 1957. While the City ordinance of that date was invalid to the extent that it attempted to transfer respondents from the Police Department to the Administrative Pool of the Personnel Department, as held in the Handley case, it was nevertheless effective to set the salary or wage for clerks and switchboard operators at the minimum permitted by statute. This exercise of authority by the City Council was within the powers vested in the City Council by law and hence was valid and enforceable. City of San Antonio v. Whitten, 161 Texas _____, 338 S.W. 2d 119, cf. City of San Antonio v. Handley, Texas Civ. App., 308 S.W. 2d 608, wr. ref.

■ While at one time clerk and switchboard operators may have been compensated at the same rate of pay as patrolmen, they did not belong to the same civil service classification. The City Council could reduce the salaries of clerks and switchboard operators without reducing the pay of patrolmen. Such action is not forbidden by the terms of Article 1269m, section 8 which provides that, "all persons in each classification shall be paid the same salary * * * ."

Although the trail court overruled the City's motion for summary judgment, that action is not urged as error here. Not being in position to render summary judgment for the City, the cause will be remanded to the trial court.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause remanded to the District Court for further proceedings consistent with this opinion.

Opinion delivered July 20, 1960.

Rehearing overruled October 5, 1960.